IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**DEBBIE R. BARBER**                                                                             **PLAINTIFF**

vs.                              **CIVIL NO.: 4:14-cv-00323**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                   **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Plaintiff Debbie R. Barber has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits. Both parties have submitted appeal briefs and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, the Court has considered evidence that detracts from the Commissioner's decision as well as evidence that supports it.

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

Ms. Barber alleged that she became unable to work on February 14, 2011. Her claim was denied on June 19, 2012, and again upon reconsideration on November 13, 2012. At Ms. Barber's request, an he Administrative Law Judge[2] (ALJ) held a hearing on June 19, 2013. Ms. Barber testified at the hearing, along with a vocational expert. On July 11, 2013, the ALJ issued an opinion finding that Ms. Barber had not been under a disability, for purposes of the Social Security Act, from February 14, 2011, through the date of his decision. The Appeals Council denied Ms. Barber's request for review and affirmed the ALJ's decision. Ms. Barber then filed this appeal.

The ALJ followed the familiar five-step evaluation process in determining that Ms. Barber was not disabled.[3] He acknowledged that Ms. Barber had severe impairments – degenerative disc disease and a right shoulder impairment – but found that she could still perform light work, except that she could only occasionally reach overhead with her right upper extremity. (SSA p. 14) Relying on the testimony of a vocational expert, the ALJ found, at step four of the five-step analysis, that Ms. Barber could still perform her past relevant work as a housekeeper and product assembler. (SSA p.16)

---

[2]The Honorable Bill Jones.

[3]Was the claimant was engaged in substantial gainful activity? If not, did she have a severe impairment? If so, did the impairment (or combination of impairments) meet or equal a listed impairment? If not, did the impairment (or combination of impairments) prevent the claimant from performing her past relevant work? If so, did the impairment (or combination of impairments) prevent the claimant from performing any other jobs available in significant numbers in the national economy? 20 C.F.R. § 404.1520(a)-(g).

*Plaintiff's Points on Appeal*

Ms. Barber raises two issues in this appeal. First, she argues that the ALJ erred in finding that she could perform a reduced range of light work by improperly discounting the opinion of her primary care physician, Jacky F. Dunn, D.O. Second, she argues that the ALJ erred in relying on the testimony of the vocational expert because the vocational expert erred in categorizing Ms. Dunn's work as a production assembler. (#9, p. 8)

*Treating Physician Evidence*

A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller v. Colvin*, 784 F.3d 472 (8th Cir. 2015). The opinion of a treating physician, however, does not automatically control; nor does it eliminate the need to evaluate the record as a whole. *Id.* (quoting *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001)). An ALJ may discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of the opinions. *Id.* (citations omitted). Further, a medical source opinion that an applicant is disabled or unable to work involves an issue reserved for the Commissioner and, therefore, is not given controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) (citations omitted).

The question is whether the ALJ gave good reasons for rejecting Dr. Dunn's opinion in favor of the opinions of non-treating physicians. The ALJ rejected Dr. Dunn's opinion based on several factors: the limitations Dr. Dunn found were "extreme" and inconsistent with the relatively conservative course of treatment he provided Ms. Barber; relatively mild objective findings after MRIs; and Ms. Barber's activities of daily living.

Dr. Dunn treated Ms. Barber for several years for various problems. He sent her to a consulting orthopedist, W. Bruce Brown, M.D., in October of 2012, to assess her shoulder pain. Dr. Brown took x-rays of Ms. Barber's shoulder and diagnosed bursitis and tendinitis. (SSA p. 335) Dr. Brown recommended that Ms. Barber follow up with an MRI of her shoulder. (SSA p. 336) Ms. Barber told Dr. Brown, however, that she would not elect to have an MRI of her shoulder due to concerns about the cost. (*Id.*)

Ms. Barber did elect to undergo an MRI of her thoracic spine about one month later, November 26, 2012 (SSA p. 327), which undercuts her argument that she chose not to proceed with her treating orthopedist's recommendation for an MRI of her shoulder. The ALJ discussed the findings of the thoracic spine MRI, which showed confirmed degenerative disc disease and right shoulder impairment. But of course, a diagnosis is not, in and of itself, indicative of disability.

Dr. Dunn opined that Ms. Barber: could not occasionally lift or carry even ten pounds; could stand or walk less than one hour without a break; could sit for less than one hour without a break; had limited ability to push or pull with either upper or lower extremities; would require breaks from work five or more times in an eight-hour work

4

day; would have to lie in a supine position for two hours in an eight-hour work day; could not perform any work activities in a normal work day based on the totality of her symptoms; could never climb, balance squat, kneel, crouch, bend or stoop; could not reach, handle, or grip; and could finger and feel with her fingers only two hours in an eight-hour work day.  (SSA p. 343)  In his remarks, Dr. Dunn attributed these limits to Ms. Barber's degenerative arthritis of the right hand, with pain involvement; disc protrusions and disc bulges in the thoracic spine, muscle spasms in the thoracic region; and multilevel degenerative findings and mild stenosis in the cervical spine.  (SSA p. 344)  These limitations are fairly characterized as "extreme."

Notably, in his description of the "principal clinical and laboratory findings and symptoms or allegations (including pain) from which the impairment-related capacities and limitations indicated [above] were concluded," Dr. Dunn made no mention of Ms. Barber's shoulder problem.  (SSA p. 344)  This is not to say that Ms. Barber did not have shoulder issues and pain, because, as the ALJ found, she did.  But the record does reflect relatively conservative treatment, with no narcotic pain medication.  (SSA pp. 254, 276, 264, 281, 314, 334, 354)

The ALJ noted Ms. Barber's activities that were inconsistent with her report of disabling pain.  Ms. Barber reported preparing simple meals, doing chores such as ironing, laundry, loading the dishwasher, feeding pets, driving, shopping for groceries, attending grandchildren's birthday parties.  (SSA p. 172-176)  While trying to stay

somewhat active is commendable, the ALJ properly considered whether these activities were inconsistent with disabling pain.

There were other factors that the ALJ properly considered. Ms. Barber left her last job in Feburary of 2011, due to a lay-off at her place of work. (SSA p. 27) She drew unemployment benefits until February of 2012, a year after her layoff. (SSA p. 28) Her application for benefits, however, alleges an onset date of February 14, 2011, her last day of employment.

Based on all of these factors, the Court concludes that the ALJ gave good reasons for rejecting the opinion of her treating primary care physician. There is substantial evidence to support the ALJ's finding that Ms. Barber retained the functional capacity to perform a limited range of light work.

*Testimony of the Vocational Expert*

Ms. Barber also appeals based on a conflict between the Dictionary of Occupational Titles and the testimony of the vocational expert. The vocational expert testified that a person with Ms. Barber's limitations could perform the jobs of product assembler and housekeeper – both jobs that Ms. Barber had performed prior to her alleged onset date. Ms. Barber argues that the job of product assembler could not be performed by a person with her limitations because of reaching requirements.

The Court need not discuss the merits of this point because the vocational expert also identified housekeeper as a job Ms. Barber could still perform in spite of her impairments. Ms. Barber reported that her past work as a housekeeper required her to

reach only two hours during an eight-hour work day.  (SSA p. 164)  Because the job of housekeeper could be performed by a person with Ms. Barber's limitations, there is no reversible error here, even if she would not have been able to perform her prior work as a product assembler.

*Conclusion*

There is substantial evidence to support the Commissioner's decision that Debbie R. Barber retained the residual functional capacity to perform a reduced range of light work.  There was no legal error in the ALJ's finding that Ms. Barber could perform her past relevant work as a housekeeper.  The finding that Ms. Barber was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed.  The case is dismissed, with prejudice this 19th day of June, 2015.

_____
UNITED STATES MAGISTRATE JUDGE